IN THE SUPERIOR COURT OF HALL COUNTY
STATE OF GEORGIA

ROGER MILLER and THOMAS SMITH,

    Plaintiffs,

vs.

BARRY TODD ROBSON, KELLIE
YOUNG, GREGORY GLOVER a/k/a
ADRIAN GLOVER, VICKI SULLENS,
MICHELLE PEDRETTI, WILL WHITE,
ALLERGYFREE FOODS COMPANY,
INC., PRIME-PAK FOODS, INC., PRIME
MERGER SUBSIDIARY, INC., KINGDOM
CONNECTION ENTERPRISES, LLC,
UNITED COMMUNITY BANK
(GEORGIA), UNITED COMMUNITY
BANKS, INC., L & D FOOD
DISTRIBUTORS, INC., JOHN DOE
INDIVIDUAL(S) and JOHN DOE
ENTITY(IES),

    Defendants.

Civil Action
File No.:   _2010·CV·4145 J_

JURY TRIAL DEMANDED



## COMPLAINT

COME NOW the Plaintiffs, Roger Miller ("Miller") and Thomas Smith ("Smith") (hereinafter "Plaintiffs"), by and through undersigned counsel, and for their Complaint against Barry Todd Robson ("Robson"), Kellie Young ("Young"), Gregory Glover a/k/a Adrian Glover ("Glover"), Vicki Sullens ("Sullens"), Michelle Pedretti ("Pedretti"), Will White ("White"), AllergyFree Foods Company, Inc. ("AFF"), Prime-Pak Foods, Inc. ("Prime Pak"), Prime Merger Subsidiary, Inc. ("Prime Merger"), Kingdom Connection Enterprises, LLC ("Kingdom Connection"), United Community Bank (Georgia) ("UCB"), United Community Banks, Inc. ("UCBI"), L & D Food Distributors, Inc. ("L & D"), John Doe Individual(s) and John Doe Entity(ies) (hereinafter collectively "Defendants"), hereby show this honorable Court as follows:

## I. PARTIES

1.

Plaintiff ROGER MILLER is an individual resident of the State of Florida, a member of MSM Enterprises, LLC, and a shareholder[1] and creditor of AllergyFree Foods Company, Inc.

2.

Plaintiff THOMAS SMITH is an individual resident of the State of Florida, a member of MSM Enterprises, LLC, a shareholder[2] and creditor of AllergyFree Foods Company, Inc., and a shareholder and creditor of L & D Food Distributors, Inc.

3.

Upon information and belief, Defendant BARRY TODD ROBSON is an individual resident of Hall County. Service may be perfected on him at his last known address, 4617 Blakeford Court, Flowery Branch, GA 30542, or wherever he may be found.

4.

Upon information and belief, Defendant KELLIE YOUNG is an individual resident of the State of Tennessee. Defendant Young's current address is unknown at this time.

5.

Upon information and belief, Defendant GREGORY GLOVER a/k/a ADRIAN GLOVER is an individual resident of Forsyth County. Service may be perfected on him at his last known address, 5025 Mundy Drive, Cumming, GA 30028, or wherever he may be found.

---

[1] Mr. Miller was indisputably a shareholder of AllergyFree Foods Company, Inc., a Florida corporation. His current status as a shareholder of AFF is an issue in contention in this action.

[2] Mr. Smith was indisputably a shareholder of AllergyFree Foods Company, Inc., a Florida corporation. His current status as a shareholder of AFF is an issue in contention in this action.

6.

Upon information and belief, Defendant VICKI SULLENS is an individual resident of Hall County. Defendant Sullens' current address is unknown at this time.

7.

Upon information and belief, Defendant MICHELLE PEDRETTI is an individual resident of Forsyth County. Service may be perfected on her at her last known address, 5015 Mundy Court, Cumming, GA 30028, or wherever she may be found.

8.

Upon information and belief, Defendant WILL WHITE is an individual resident of Hall County. Defendant White's current address is unknown at this time.

9.

Upon information and belief, Defendant ALLERGYFREE FOODS COMPANY, INC., is a Florida corporation[3] having its registered office in Hall County. Service may be perfected on AFF's registered agent, Todd Robson, at 2076 Memorial Park Drive, Gainesville, GA 30504, or wherever he may be found.

10.

Upon information and belief, Defendant PRIME-PAK FOODS, INC., is a Georgia

---

[3] The status of this entity as either a Florida or Georgia corporation is an issue in contention in this action. The records of the Georgia Secretary of State and the Florida Department of State currently reflect a conversion from a Florida corporation to a Georgia corporation, however the validity of this conversion is in dispute. A disputed merger of the purported Georgia entity is also an issue in this action. Due to various filings with the respective state agencies, there are in fact four (4) corporate reference numbers on record for the name "AllergyFree Foods Company, Inc.", all referring to the same real business entity: (1) Florida Document No. P06000151256, (2) Georgia Control No. 07042965, (3) Georgia Control No. 07082371, and (4) Georgia Control No. 09008044. The Defendant AllergyFree Foods Company, Inc. named in this action is intended to encompass and does hereby refer to any and all of these various incarnations of this single real business entity.

corporation having its registered office in Hall County. Service may be perfected on Prime Pak's registered agent, Barry Todd Robson, at 4617 Blakeford Court, Flowery Branch, GA 30542, or wherever he may be found.

11.

Upon information and belief, Defendant PRIME MERGER SUBSIDIARY, INC., is a Georgia corporation having its registered office in Hall County. Service may be perfected on Prime Merger's registered agent, Barry Todd Robson, at 2076 Memorial Park Drive, Gainesville, GA 30504, or wherever he may be found.

12.

Upon information and belief, Defendant KINGDOM CONNECTION ENTERPRISES, LLC, is a Georgia limited liability company having its registered office in Hall County. Service may be perfected on Kingdom Connection's registered agent, Kellie Young, at 3716 Maple Forge Lane, Gainesville, GA 30504, or wherever she may be found.

13.

Upon information and belief, Defendant UNITED COMMUNITY BANK (GEORGIA) is a Georgia bank having its registered office in Union County. Service may be perfected on UCB's registered agent, Brad Miller, at 177 Highway 515 East, Blairsville, GA 30512, or wherever he may be found.

14.

Upon information and belief, Defendant UNITED COMMUNITY BANKS, INC. is a Georgia corporation having its registered office in Union County. Service may be perfected on UCBI's registered agent, Brad Miller, at 177 Highway 515 East, Blairsville, GA 30512, or wherever he may be found.

15.

Upon information and belief, Defendant L & D FOOD DISTRIBUTORS, INC., is a Georgia corporation having its registered office in Gwinnett County. Service may be perfected on L & D's registered agent, Dave McMahon, II, at 713 Bradford Creek Trail, Duluth, GA 30096, or wherever he may be found.

16.

Upon information and belief, Defendants JOHN DOE INDIVIDUAL(S) and JOHN DOE ENTITY(IES) are the individual(s) (whether male or female) and/or entity(ies) that owned and/or operated that certain business entity conducting business under the trade name AllergyFree Foods, owned and/or operated that certain commercial property located at, and commonly known as, 310 West Hightower Drive, Dawsonville, Georgia, were the recipient(s) of any funds or property properly belonging to AllergyFree Foods Company, Inc. MSM Enterprises, LLC, and/or L & D Food Distributors, Inc., and/or were the successor(s) of, assign(s) of, or any other party liable for the debts and/or conduct of, any of the entities named in this action. These Defendants also represent any other individual(s) or entity(ies) that participated in, or ratified, the conduct described herein, or are, or may be, otherwise liable to Plaintiffs on the claims set forth in this Complaint. O.C.G.A § 9-11-10(a) provides that "[a] party whose name is not known may be designated by any name; and, when his true name is discovered, the pleading may be amended accordingly." Plaintiffs expressly reserve this right to amend their pleadings to correct a misnomer in the event the true names of these defendants are discovered through further investigation or discovery. Service may be perfected these Defendants, or on any authorized agent(s) thereof, wherever they may be found.

## II. JURISDICTION AND VENUE

17.

Jurisdiction lies with this Court pursuant to Article VI, Section IV, Paragraph I of the Georgia Constitution.

18.

Defendants AFF, Prime Pak, Prime Merger and Kingdom Connection are subject to the jurisdiction of this Court, and venue herein is proper, pursuant to O.C.G.A. § 14-2-510(b)(1) and O.C.G.A. § 14-11-1108(b) because Defendants AFF, Prime Pak, Prime Merger and Kingdom Connection maintain their registered offices in Hall County.

19.

Upon information and belief, Defendants Robson, Glover, Sullens, Pedretti, White, John Doe Individual(s) and John Doe Entity(ies) are subject to the jurisdiction of this Court, and venue herein is proper, pursuant to Article VI, Section II of the Georgia Constitution because they are residents of Hall County. Alternatively, Defendants Robson, Glover, Sullens, Pedretti, White, John Doe Individual(s) and John Doe Entity(ies) are subject to the jurisdiction of this Court, and venue herein is proper, pursuant to Article VI, Section II, Paragraph IV of the Georgia Constitution and O.C.G.A. § 9-10-31 because they are joint tortfeasors, joint obligors, joint promisors, joint contractors and/or copartners.

20.

Upon information and belief, Defendants UCB, UCBI and L & D are subject to the jurisdiction of this Court, and venue herein is proper, pursuant to Article VI, Section II, Paragraph IV of the Georgia Constitution and O.C.G.A. § 9-10-31 because they are joint tortfeasors, joint obligors, joint promisors, joint contractors and/or copartners.

21.

Upon information and belief, Defendant Young is subject to the jurisdiction of this Court pursuant to O.C.G.A. § 9-10-91(1), (2), (3) and/or (4). Upon information and belief, venue herein is proper as to Defendant Young pursuant to O.C.G.A. § 9-10-93 because Hall County is where "a substantial part of the business was transacted" and/or where "the tortious act, omission, or injury occurred", and also because venue herein is proper as to the Georgia defendants in this action.

### III. FACTUAL BACKGROUND

22.

L & D Food Distributors, Inc. was incorporated in Georgia on December 22, 2003.

23.

On or about May 2006, Plaintiff Thomas Smith acquired fifty (50) shares of L & D stock as compensation for work performed for L & D in the capacity of director of marketing.

24.

Upon information and belief, L & D was incorporated by David McMahon, II, for the purpose of engaging in the development and sale of allergen free food products.

25.

Upon information and belief, the operations, assets and liabilities of L & D were ultimately transferred over to a new entity to carry on this emerging business. This entity was formed on December 8, 2006, as AllergyFree Foods Company, Inc., a Florida corporation.

26.

The initial shareholders, directors and officers of AFF were Todd Robson a/k/a Barry Todd Robson, David McMahon, Thomas Smith and Edward Larkin.

27.

Thomas Smith contributed, among other things, $30,000 and acquired a 15% ownership stake in AFF. As further consideration, Mr. Smith made his personal credit available for limited use by AFF.

28.

Upon information and belief, Ed Larkin may have contributed some capital to the company, although this is uncertain and the exact amount, if any, is unknown. In any event, Larkin acquired a 10% ownership stake.

29.

Upon information and belief, Robson did not provide any initial capital, but instead offered the services of Prime Pak for AFF's manufacturing and distribution provided that out of pocket expenses were covered by AFF, and further promised to market the AFF product line to his existing customers and numerous non-profit religious organizations with which he had a relationship.

30.

In return for the uncertain value of this arrangement to AFF, Robson was awarded a 30% ownership stake in AFF.

31.

Upon information and belief, David McMahon acquired a 30% ownership stake in AFF, but did not invest any actual capital, instead contributing his services as President of the company.

32.

In or about February 2007, needing further operating capital, AFF agreed to issue shares

representing a 15% ownership interest to Roger Miller in exchange for a $500,000 loan to company. As further consideration, Mr. Miller made his personal credit available for limited use by AFF.

33.

Thereafter, in or about May 2007, the shareholders of AFF entered into a transaction for the purchase of a certain commercial property located at 310 West Hightower Drive, Dawsonville, Georgia (hereinafter the "West Hightower Property"), which was to be for the use and benefit of AFF.

34.

For the purposes of this real estate transaction, the shareholders of AFF utilized a Florida limited liability company, MSM Enterprises, LLC, in which they each held an equal 20% ownership interest.

35.

MSM purchased the West Hightower Property on or about May 23, 2007, pursuant to a Limited Warranty Deed recorded at Deed Book 813, Page 166, Dawson County, Georgia Records.

36.

MSM further executed a Security Deed to United Community Bank in the original principal amount of $1,336,057.50, which is recorded at Deed Book 813, Page 169, Dawson County Records (hereinafter the "First MSM Mortgage").

37.

On or about February 7, 2008, this Security Deed was modified and the principal amount secured was increased to $1,431,880.48. This Modification is recorded at Deed Book 853, Page

182, Dawson County Records.

38.

In consideration for MSM providing the West Hightower Property to AFF for its use, AFF agreed to pay, in lieu of rent, the mortgage and other expenses of the Property.

39.

At or about the same time, a second Security Deed from MSM to United Community Bank in the original principal amount of $500,195.00 was executed and recorded at Deed Book 858, Page 101, Dawson County Records (hereinafter the "Second MSM Mortgage"). Upon information and belief, this second Security Deed secured a Note executed by AFF for a credit line in the aforementioned amount.

40.

Over the course of the next few years, the business operated largely outside of the personal knowledge of Roger Miller and Thomas Smith. They were directors, and nominally, though not in practice, officers, of the company, but were otherwise essentially passive investors, and were not materially involved in the day to day business operations of AFF.

41.

Very little, if any, information was provided to Miller and Smith regarding the operations and finances of AFF, and despite multiple requests made by the Plaintiffs for, among other things, the accounting and financial records of the company, such basic corporate records were, for the most part, not provided, and when records were provided, they were, upon information and belief, false and misleading as to the true financial status of the company.

42.

During this same period, Defendants acquired significant sums of money on the personal

credit of Roger Miller and Thomas Smith.

43.

Moreover, upon information and belief, additional sums were obtained on Miller and Smith's personal credit without their knowledge and authorization.

44.

These funds, obtained on Miller and Smith's personal credit, for the benefit of Defendants, at least those funds that were authorized, were loans to be repaid to the Plaintiffs.

45.

For a period of time, AFF did make payments on some of these obligations, but eventually those payments ceased.

46.

Meanwhile, upon information and belief, during this same time period, Defendant Robson used his position in AFF to improperly divert funds of the corporation to himself, his individual co-conspirators and/or entities under his control.

47.

Specifically, upon information and belief, Robson, among other things, processed certain multi-million dollar orders for AFF product, which were completed, but payment was never credited to AFF's accounts.

48.

Also, upon information and belief, Robson misappropriated certain business opportunities for the benefit of himself, his individual co-conspirators and/or entities under his control.

49.

Upon information and belief, Robson improperly diverted AFF resources to develop a separate water bottling company from which Miller and Smith were excluded.

50.

Eventually, upon information and belief, beginning around December 2008, Robson set in motion an elaborate scheme to gain control of AFF and the assets of MSM.

51.

As an initial step, upon information and belief, Robson threatened to pursue criminal charges against David McMahon for certain conduct allegedly engaged in while acting as the President of AFF.

52.

Upon information and belief, Robson used this threat of criminal prosecution, among other things, as leverage to extort a certain Shareholder Management Agreement from David McMahon, which was entered into on or about December 9, 2008, and which contained numerous false and misleading representations regarding the ownership and obligations of AFF. As part of this dubious agreement, David McMahon purported to transfer a 21% interest in AFF to Robson, thereby ostensibly giving him a 51% interest and effective control of the company.

53.

Thereafter, in or about January, 2009, AFF, under Robson's direction, initiated a process intended to convert AFF, a Florida corporation, into a Georgia corporation of the same name.

54.

As part of the notice of this intended action, AFF, again under Robson's direction, produced certain financial statements, which, upon information and belief, inaccurately

represented the true financial status of AFF.

### 55.

Also, around this same time, Miller and Smith first learned that the limited financial information provided to induce their initial capital contributions and share purchases, and used to obtain loans on their personal credit, was materially false and misleading.

### 56.

Ultimately, the purported conversion of AFF from a Florida corporation to a Georgia corporation occurred under Robson's assertion of majority control and is reflected on the respective state agency records of Florida and Georgia as of January 22, 2009. The validity of this conversion is contested.

### 57.

Thereafter, Robson, again asserting majority control, structured a purported merger of AFF with Prime Merger, a shell company controlled by Robson, which was ostensibly consummated on February 23, 2009. The validity of this merger is contested.

### 58.

Again, upon information and belief, the documents produced in conjunction with this purported merger transaction painted a false and misleading picture of the financial status of AFF, and falsely asserted as justification for the merger that Prime Pak was the largest creditor of AFF.

### 59.

On or about April 27, 2009, Prime Pak sent Miller and Smith two checks for $75.00 each purporting to represent the value of the Plaintiffs' ownership interest in AFF. These checks were not accepted and were never cashed.

60.

Having thus solidified his control of AFF, subject to the contested validity of the corporate conversion and merger described above, and ostensibly having driven out all of the other four (4) shareholders so that Robson effectively owned AFF and all of its assets, Robson then set in motion a scheme to acquire full control of the sole material asset of MSM, the West Hightower Property.

61.

After first unsuccessfully attempting to procure Plaintiffs' ownership interests in MSM in return for a promised release of liability on their personal guaranties, notwithstanding Robson's own personal guaranty for the same debts, Robson initiated the following series of transactions where were, upon information and belief, engaged in with the knowledge and complicity of UCB, UCBI and Will White, a senior executive of UCB and/or UCBI.

62.

On or about June 4, 2009, for no apparent consideration, United Community Bank assigned all of its right, title and interest in the Second MSM Mortgage to Kingdom Connection Enterprises, LLC, an entity believed to be owned by Todd Robson and/or Kellie Young. This Assignment is recorded at Deed Book 914, Page 510, Dawson County Records.

63.

Kingdom Connection then turned around and used this assigned interest from UCB, as well as certain guaranties from Todd Robson, to secure a new loan of $500,445.00 from UCB. This Collateral Assignment is recorded at Deed Book 914, Page 618, Dawson County Records.

64.

At this point, Todd Robson was now acting on behalf of the nominal debtors, AFF and

MSM, the ultimate debtor, AFF, and the new creditor, Kingdom Connection.

65.

Shortly thereafter, as AFF, now effectively under Robson's full control, had ceased making payments on the Second MSM Mortgage, Kingdom Connection foreclosed on the 310 West Hightower property via Deed Under Power recorded at Deed Book 921, Page 1, Dawson County Records, by means of which Kingdom Connection took title to the Property.

66.

On or about the same date, Kingdom Connection then provided a Security Deed on the Property recorded at Deed Book 921, Page 4, Dawson County Records, which secured the prior loan from UCB to Kingdom Connection in the amount of $500,445.00.

67.

On or about November 12, 2009, Kingdom Connection then executed a Security Deed on the Property to UCB in the original principal amount of $1,379,953.65.

68.

Finally, all of the MSM Mortgages were then cancelled of record by United Community Bank.

69.

In the end, Robson's scheme, which, upon information and belief, all of the Defendants materially participated in and conspired to effectuate, effectively resulted in the purported acquisition on the part of Robson, his individual co-conspirators and/or entities under his control, of all of the material assets of AFF and MSM to exclusion of the other shareholders, most notably Miller and Smith.

70.

As a result of this conduct, Plaintiffs have suffered an enormous and life altering financial loss, including the devastation of their personal credit, which only continues to further compound that already significant loss.

71.

Plaintiffs now seek to recover damages against Defendants, and obtain appropriate equitable relief, as, and for the reasons, set forth below.

## IV. CLAIMS

### COUNT ONE
### BREACH OF CONTRACT

72.

Plaintiffs re-allege and incorporate herein by reference Paragraphs 1 through 71 of this Complaint as if fully set forth herein.

73.

Miller and Smith both agreed, for the benefit of AFF and its shareholders, to make their personal credit available so that the business could obtain operating capital.

74.

AFF and its shareholders made use of this personal credit and borrowed funds in the approximate amount of $340,000 on the credit of Thomas Smith and $775,000 on the credit of Roger Miller.

75.

These funds accrued to the benefit of AFF, its shareholders and any other parties to whom the funds may have been disbursed, and they were borrowed under the express agreement of AFF to repay all funds borrowed.

76.

In addition, upon information and belief, and in the alternative to the claim that the acquisition of these funds was unauthorized, Thomas Smith made his personal credit available for funds to be borrowed by L & D.

77.

L & D made use of this personal credit and borrowed funds in the approximate amount of $78,000 on the credit of Thomas Smith.

78.

These funds accrued to the benefit of L & D, its shareholders and any other parties to whom the funds may have been disbursed, and they were borrowed under the express or implicit agreement of L & D to repay all funds borrowed.

79.

AFF, expressly or implicitly, succeeded to any and all liabilities of L & D.

80.

In addition, when the five shareholders, Robson, McMahon, Larkin, Miller and Smith, utilized MSM for the purpose of purchasing the West Hightower Property, this transaction was entered into with the express agreement between the shareholders, and with AFF, that AFF would be obligated to pay, in lieu of rent and in consideration for its use of the premises and for the use of MSM's credit and that of its members, all mortgage payments and expenses related to the West Hightower Property.

81.

Lastly, "'[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement.'" *Brack v. Brownlee*, 246 Ga. 818, 820, 273 S.E.2d 390 (1980)

(quoting Restatement (Second) of Contracts § 231).

82.

AFF performed its foregoing obligations and made payments for a period of time, but then ceased.

83.

Despite repeated demands for payment, AFF has failed and refused to fulfill its obligations, and has done so in bad faith.

84.

All liabilities of AFF survive despite the purported conversion and merger engaged in by Defendant Robson. *See* Fla. Stat. 607.1114(3); O.C.G.A. § 14-2-1106(3).

85.

Plaintiffs have complied with all of their obligations under the parties' agreement for the use of their personal credit, and all conditions precedent to their right to recover have been satisfied or otherwise waived by Defendants or by the party entitled to insist on any such conditions.

86.

All of these breaches of contract, including breach of the duty of good faith and fair dealing, have caused substantial financial harm to Plaintiffs, as well as the devastation of Miller's and Smith's personal credit and the loss of the West Hightower Property in a disputed foreclosure.

87.

Therefore, Defendants are liable to Plaintiffs for breach of contract, and Plaintiffs are entitled to damages in an amount to be proven or determined at trial.

## COUNT TWO (IN THE ALTERNATIVE)
## QUANTUM MERUIT

88.

To the extent not inconsistent with the elements of this alternative claim, Plaintiffs re-

allege and incorporate herein by reference Paragraphs 1 through 87 of this Complaint as if fully

set forth herein.

89.

O.C.G.A. § 9-2-7 provides that "[o]rdinarily, when one renders service or transfers

property which is valuable to another, which the latter accepts, a promise is implied to pay the

reasonable value thereof."

90.

For a claim of quantum meruit under O.C.G.A. § 9-2-7, "the essential elements are: (1)

the performance of valuable services; (2) accepted by the recipient or at his request; (3) the

failure to compensate the provider would be unjust; and (4) the provider expected compensation

at the time services were rendered." *Amend v. 485 Properties,* 280 Ga. 327, 329, 627 S.E.2d 565

(2006).

91.

Here, Plaintiffs provided the use of their credit and use of the West Hightower Property,

all of which were valuable to Defendants, they were requested by Defendants and knowingly

accepted, Plaintiffs provided these benefits with the expectation that they would be compensated,

and it would be unjust for Defendants to retain these substantial benefits without compensating

Plaintiffs.

92.

Therefore, Defendants are liable to Plaintiffs in quantum meruit, and Plaintiffs are

entitled to damages in an amount to be proven or determined at trial.

**COUNT THREE (IN THE ALTERNATIVE)**
**UNJUST ENRICHMENT**

93.

To the extent not inconsistent with the elements of this alternative claim, Plaintiffs re-allege and incorporate herein by reference Paragraphs 1 through 92 of this Complaint as if fully set forth herein.

94.

"The concept of unjust enrichment in law is premised upon the principle that a party cannot induce, accept, or encourage another to furnish or render something of value to such party and avoid payment for the value received; otherwise the party has been unjustly enriched at the expense of another and, in fairness and good conscience, must reimburse the other to the extent of the value conferred. Inherent in unjust enrichment is the requirement that the receiving party knew of the value being bestowed upon them by another and failed to stop the act or to reject the benefit." *Reidling v. Holcomb*, 225 Ga.App. 229, 232, 483 S.E.2d 624 (1997).

95.

Here, Defendants obtained the benefit of Plaintiffs' credit and use of the West Hightower Property, these benefits were requested by Defendants, or otherwise obtained without consent, were knowingly accepted by Defendants, and it would be unjust for Defendants to retain these benefits without compensating Plaintiffs.

96.

Therefore, Defendants are liable to Plaintiffs for unjust enrichment, and Plaintiffs are entitled to damages in an amount to be proven or determined at trial.

-20-

## COUNT FOUR
## BREACH OF FIDUCIARY DUTY

97.

Plaintiffs re-allege and incorporate herein by reference Paragraphs 1 though 96 of this Complaint as if fully set forth herein.

98.

"[A] claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." *Griffin v. Fowler*, 260 Ga.App. 443, 445, 579 S.E.2d 848 (2003).

99.

Pursuant to O.C.G.A. § 23-2-58, the relationship between business partners is one of trust and confidence that gives rise to a fiduciary duty that each partner owes to the other. *Douglas v. Bigley*, 278 Ga.App. 117, 120, 628 S.E.2d 199 (2006).

100.

The relationship between the five shareholder and members of AFF and MSM was one in the nature of a business partnership and fiduciary obligations were owed by Robson, Larkin, McMahon, Miller and Smith to each other and to the companies.

101.

Robson also had fiduciary obligations to the Plaintiffs in his capacity as an officer, director and/or controlling shareholder, and as a member of MSM.

102.

These fiduciary obligations arose under both Florida and Georgia law.

103.

Upon information and belief, Defendant Robson breached his fiduciary obligations to the

Plaintiffs through the following conduct, which is provided by way of illustration, and not limitation:

(a) Providing false and misleading information in connection with the purported conversion of entities;

(b) Engaging in a purported conversion that was not in the best interest of the minority shareholders;

(c) Providing false and misleading information in connection with the purported merger;

(d) Engaging in a purported merger that was not in the best interest of the minority shareholders;

(e) Engaging in transactions detrimental to the Plaintiffs where Robson had a clear conflict of interest, including, but not limited to, the purported conversion, merger with a Robson controlled entity, and foreclosure of the West Hightower Property by a Robson controlled entity, in spite of Robson's own personal guaranty on the mortgage loans;

(f) Placing Robson's personal interest, and that of his associates and/or entities under his control, ahead of the interests of the Plaintiffs;

(g) Failing to provide timely and accurate financial and other material corporate information to Miller and Smith;

(h) Engaging in a course of conduct designed to shut Miller and Smith out of decisions related to the operation of AFF and MSM; and

(i) Engaging in any and all other tortious conduct alleged in this Complaint, which is hereby incorporated by reference.

104.

All of these breaches of fiduciary duty have caused substantial financial harm to

Plaintiffs, as well as the devastation of Miller's and Smith's personal credit and the loss of the West Hightower Property in a disputed foreclosure.

105.

Therefore, Defendants are liable to Plaintiffs for breach of fiduciary duty, and Plaintiffs are entitled to damages in an amount to be proven or determined at trial.

## COUNT FIVE
## FRAUD

106.

Plaintiffs re-allege and incorporate herein by reference Paragraphs 1 through 105 of this Complaint as if fully set forth herein.

107.

"'The tort of fraud has five elements: (1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages.'" *Dennis v. First Nat'l Bank of the South*, 293 Ga.App. 890, 895, 668 S.E.2d 479 (2008).

108.

"Moreover, '[w]here one person sustains towards another a relation of trust and confidence, his silence when he should speak or his failure to disclose what he ought to disclose constitutes fraud in law just as ... actual affirmative false representations.' " *Douglas v. Bigley*, 278 Ga.App. 117, 122, 628 S.E.2d 199 (2006).

109.

Upon information and belief, Defendants engaged in actual fraud in the following ways, which are provided by way of illustration, and not limitation:

(a) Obtaining funds on the credit of Plaintiffs without a present intent to fully honor their

obligations with respect thereto;

(b) Obtaining funds on the credit of Plaintiffs based on false and misleading financial information;

(c) Obtaining use of MSM's, and its members', credit and use of the West Hightower Property without a present intent to fully honor their obligations with respect thereto;

(d) Using, and concealing the use of, Plaintiffs' credit beyond that which was authorized;

(e) Engaging in, and concealing, the improper diversion of funds that should have been used to pay on the obligations owed to Plaintiffs;

(f) Securing purported majority control of AFF through the use of false and misleading representations;

(g) Preparing and providing false and misleading financial records and tax returns; and

(h) Preparing and providing false and misleading transaction records and invoices.

110.

Upon information and belief, Defendants made these representations, omissions or concealments intentionally with knowledge that they were false and misleading or with reckless disregard for the truth.

111.

Upon information and belief, Defendants made these representations, omissions or concealments knowing, and intending, that third parties, including Plaintiffs, would rely on them.

112.

Plaintiffs justifiably relied on the limited information they were able to obtain in making decisions with regard to AFF, L & D and MSM, and in refraining from taking legal or other action against the Defendants at an earlier time.

113.

Defendants' fraudulent conduct has caused substantial financial harm to Plaintiffs, as well as the devastation of Miller's and Smith's personal credit and the loss of the West Hightower Property in a disputed foreclosure.

114.

Therefore, Defendants are liable to Plaintiffs for fraud, and Plaintiffs are entitled to damages in an amount to be proven or determined at trial.

115.

Plaintiffs are further entitled, based on this actual fraud, to such appropriate equitable relief as may be sought in this Complaint.

## COUNT SIX (IN THE ALTERNATIVE)
### CONSTRUCTIVE FRAUD

116.

To the extent not inconsistent with the elements of this alternative claim, Plaintiffs re-allege and incorporate herein by reference Paragraphs 1 though 115 of this Complaint as if fully set forth herein.

117.

Defendants' fraudulent conduct alleged in this Complaint, incorporated herein by reference, further constitutes an "act of omission or commission, contrary to legal or equitable duty, trust, or confidence justly reposed, which is contrary to good conscience and operates to the injury of another." O.C.G.A. § 23-2-51(b).

118.

Thus, in the alternative, even if Defendants' conduct does not amount to actual fraud, Defendants are still liable to Plaintiffs for constructive fraud, and Plaintiffs are entitled to such

appropriate equitable relief as may be sought in this Complaint.

## COUNT SEVEN (IN THE ALTERNATIVE)
## NEGLIGENT MISREPRESENTATION

119.

To the extent not inconsistent with the elements of this alternative claim, Plaintiffs re-allege and incorporate herein by reference Paragraphs 1 through 118 of this Complaint as if fully set forth herein.

120.

The elements of a claim for negligent misrepresentation are: "(1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." *Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*, 267 Ga. 424, 426, 479 S.E.2d 727 (1997).

121.

In the alternative to Count Five of this Complaint, the allegations stated therein are incorporated by reference and herein restated as having been made or engaged in negligently.

122.

Therefore, in the alternative, Defendants are liable to Plaintiffs for negligent misrepresentation, and Plaintiffs are entitled to damages in an amount to be proven or determined at trial.

123.

Plaintiffs are further entitled, in the alternative, based on this negligent misrepresentation, to such appropriate equitable relief as may be sought in this Complaint.

COUNT EIGHT
CONVERSION

124.

Plaintiffs re-allege and incorporate herein by reference Paragraphs 1 through 123 of this Complaint as if fully set forth herein.

125.

"The owner of personalty is entitled to its possession. Any deprivation of such possession is a tort for which an action lies." O.C.G.A. § 51-10-1.

126.

" 'In order to establish a claim for conversion, the complaining party must show (1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property.' " *Dennis v. First Nat'l Bank of the South*, 293 Ga.App. 890, 896, 668 S.E.2d 479 (2008).

127.

"Although O.C.G.A. § 51-10-1 refers only to personalty, '[t]here can be a conversion of specific money …'" *Levenson v. Word*, 294 Ga.App. 104, 106, n. 5, 668 S.E.2d 763 (2008).

128.

" 'A conversion may also be proved by showing that the defendant sold the property and used the proceeds for his own benefit; and when this is shown, it is not necessary to prove a demand and refusal.' " *Williams v. National Auto Sales, Inc.*, 287 Ga.App. 283, 286, 651 S.E.2d 194 (2007).

129.

Upon information and belief, Defendants have converted the property of Plaintiffs in the following manner, which is provided by way of illustration, and not limitation:

(a) Exceeding the authorization originally provided by Miller and Smith and obtaining funds on their personal credit without their knowledge or consent; and

(b) Transferring the specific funds provided by Miller and Smith outside of the purposes for which they were entrusted to Defendants.

130.

This conduct was in violation of the Plaintiffs' right of ownership over their credit and funds obtained on their credit.

131.

In addition, Defendants were not authorized to dispose of and/or transfer the assets of AFF and/or L & D without repaying the amounts loaned by Plaintiffs.

132.

Upon information and belief, assets of AFF and/or L & D were disposed of and/or transferred without Plaintiffs' authorization

133.

"A secured creditor has a right of action for conversion if property subject to its security interest is disposed of without the creditor's authorization. The elements of such a claim include the showing of a valid security interest in the debtor's property, disposition of that property, absence of the creditor's authorization for the disposition, and resulting damage to the creditor." *William Goldberg & Co. v. Cohen*, 219 Ga.App. 628, 640, 466 S.E.2d 872 (1995).

134.

Defendants' conversion has caused substantial financial harm to Plaintiffs, as well as the devastation of Miller's and Smith's personal credit and the loss of the West Hightower Property in a disputed foreclosure.

135.

Therefore, Defendants are liable to Plaintiffs for conversion, and Plaintiffs are entitled to damages in an amount to be proven or determined at trial.

136.

Plaintiffs are further entitled, based on this conversion, to such appropriate equitable relief as may be sought in this Complaint.

COUNT NINE
WRONGFUL FORECLOSURE

137.

Plaintiffs re-allege and incorporate herein by reference Paragraphs 1 through 136 of this Complaint as if fully set forth herein.

138.

"Georgia law requires a plaintiff asserting a claim of wrongful foreclosure to establish a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages." Heritage Creek Dev. Corp. v. Colonial Bank, 268 Ga.App. 369, 371, 601 S.E.2d 842 (2004).

139.

"Powers of sale in deeds of trust, mortgages, and other instruments shall be strictly construed and shall be fairly exercised." O.C.G.A. § 23-2-114.

140.

Upon information and belief, the entire series of transactions leading to the foreclosure of the West Hightower Property was part of an unlawful scheme to transfer the Property out of MSM and into an entity controlled by Robson. This scheme was perpetrated through, among other things, Defendants' fraud, conversion, breach of fiduciary duty, theft, and other tortious

conduct as alleged in this Complaint, which allegations are incorporated herein by reference.

141.

In addition to violating the independent legal duty not to engage in this tortious conduct, Defendants violated their duty to exercise the power of sale fairly.

142.

This conduct has led to the loss of MSM's title to the West Hightower Property, and Plaintiffs have been damaged as a result of this wrongful foreclosure, including damage to Plaintiffs' credit.

143.

Therefore, Defendants are liable to Plaintiffs for wrongful foreclosure, and Plaintiffs are entitled to damages in an amount to be proven or determined at trial.

144.

Plaintiffs are further entitled, based on this wrongful foreclosure, to such appropriate equitable relief as may be sought in this Complaint.

## COUNT TEN
## CANCELLATION OF DEED UNDER POWER

145.

Plaintiffs re-allege and incorporate herein by reference Paragraphs 1 through 144 of this Complaint as if fully set forth herein.

146.

Plaintiffs hereby seek cancellation of the Deed Under Power recorded at Deed Book 921, Page 1, Dawson County, Georgia Records.

147.

This equitable relief is available based on Plaintiffs' Wrongful Foreclosure claim, and

also to the extent the Deed Under Power represents a collusive execution under the provisions of O.C.G.A. § 23-2-113.

148.

Defendants' fraudulent conduct set forth in this Complaint provides a further basis for cancellation of the Deed Under Power pursuant to O.C.G.A. § 23-2-60.

149.

In addition, Plaintiffs are entitled to a *lis pendens* under O.C.G.A. § 44-14-610, and hereby assert their right thereto, said notice to be separately filed in accordance with the provisions of the statute.

## COUNT ELEVEN
## VIOLATION OF FLORIDA BUSINESS CORPORATION ACT

150.

Plaintiffs re-allege and incorporate herein by reference Paragraphs 1 through 149 of this Complaint as if fully set forth herein.

151.

Upon information and belief, Defendants have violated the Florida Business Corporation Act (Fla. Stat. § 607.0101, *et seq.*) in the following manner, which is hereby provided by way of illustration, and not limitation:

(a) Failed to obtain valid approval of a majority of shareholders for conversion to a Georgia corporation in accordance with Fla. Stat. § 607.1112(6). *See also* Fla. Stat. 607.1302(4)(a);

(b) Failed to obtain valid approval of the board of directors for conversion to a Georgia corporation in accordance with Fla. Stat. § 607.1112(6). *See also* Fla. Stat. 607.1302(4)(a);

(c) Failed to provide proper notice of appraisal rights under Fla. Stat. § 607.1320. *See*

-31-

*also* Fla. Stat. 607.1302(4)(a);

(d) Procured the purported conversion through fraud or material misrepresentation. *See* Fla. Stat. 607.1302(4)(b);

(e) In the event the purported conversion is deemed invalid, failed to obtain valid approval of a majority of shareholders for merger with Prime Merger in accordance with Fla. Stat. § 607.1103(5). *See also* Fla. Stat. § 607.1107(1)(d) and Fla. Stat. 607.1302(4)(a);

(f) In the event the purported conversion is deemed invalid, failed to obtain valid approval of the board of directors for merger with Prime Merger in accordance with Fla. Stat. § 607.1103(2)(a) and Fla. Stat. § 607.1101(1). *See also* Fla. Stat. § 607.1107(1)(d) and Fla. Stat. 607.1302(4)(a);

(g) In the event the purported conversion is deemed invalid, failed to comply with Georgia law in accordance with Fla. Stat. § 607.1107(1)(a). *See also* Fla. Stat. 607.1302(4)(a);

(h) In the event the purported conversion is deemed invalid, failed to file articles of merger in accordance with Fla. Stat. § 607.1107(1)(c). *See also* Fla. Stat. 607.1302(4)(a);

(i) In the event the purported conversion is deemed invalid, procured the purported merger through fraud or material misrepresentation. *See* Fla. Stat. 607.1302(4)(b);

(j) Failed to maintain and provide access to corporate records, i.e. accurate accounting records in accordance with Fla. Stat. § 607.1601(2); shareholder access to records in accordance with Fla. Stat. § 607.1602; director access to records in accordance with Fla. Stat. § 607.1605; financial statements to shareholders in accordance with Fla. Stat. § 607.1620; and reports regarding shares issued for promise of future services in accordance with Fla. Stat. § 607.1621;

(k) Made unlawful distributions to shareholders in violation of Fla. Stat. § 607.06401; and

(l) Violated Robson's duty of care, duty of loyalty and duty to avoid improper conflict of interest transactions as a director under Fla. Stat. §§ 607.0830, 607.0831 and 607.0832.

152.

Plaintiffs seek damages and/or appropriate equitable relief for the foregoing violations, and further challenge and seek to invalidate the purported conversion of AFF to a Georgia corporation and the subsequent purported merger with Prime Merger.

### COUNT TWELVE
### VIOLATION OF FLORIDA LIMITED LIABILITY COMPANY ACT

153.

Plaintiffs re-allege and incorporate herein by reference Paragraphs 1 through 152 of this Complaint as if fully set forth herein.

154.

Upon information and belief, Defendants have violated the Florida Limited Liability Company Act (Fla. Stat. § 608.401, *et seq.*) in the following manner, which is hereby provided by way of illustration, and not limitation:

(a) Violated Robson's duty of care, duty of loyalty and duty to avoid improper conflict of interest transactions as a member and/or manager under Fla. Stat. §§ 608.4225 and 608.4226;

(b) Violated Robson's duties as a member and/or manager with regard to the maintenance of, and provision of access to, accurate records in accordance with Fla. Stat. § 608.4101; and

(c) Violated Robson's duties regarding wrongful distributions to members in violation of Fla. Stat. §§ 608.426 and 608.428.

155.

Plaintiffs seek damages and/or appropriate equitable relief for the foregoing violations.

COUNT THIRTEEN
VIOLATION OF GEORGIA BUSINESS CORPORATION CODE

156.

Plaintiffs re-allege and incorporate herein by reference Paragraphs 1 through 155 of this Complaint as if fully set forth herein.

157.

Upon information and belief, Defendants have violated the Georgia Business Corporation Code (O.C.G.A. § 14-2-101, *et seq.*) in the following manner, which is hereby provided by way of illustration, and not limitation:

(a) Failed to obtain valid approval of shareholders for conversion to a Georgia corporation in accordance with O.C.G.A. § 14-2-1109.2. *See also* O.C.G.A. § 14-2-1302(b);

(b) Failed to obtain valid approval of the board of directors for conversion to a Georgia corporation in accordance with O.C.G.A. § 14-2-1109.2. *See also* O.C.G.A. § 14-2-1302(b);

(c) Failed to provide proper notice of dissenters' rights under O.C.G.A. § 14-2-1320. *See also* O.C.G.A. § 14-2-1302(b);

(d) Procured the purported conversion through fraud or material misrepresentation. *See* O.C.G.A. § 14-2-1302(b);

(e) In the event the purported conversion is deemed valid, failed to obtain valid approval of a majority of shareholders for merger with Prime Merger in accordance with O.C.G.A. § 14-2-1103(e). *See also* O.C.G.A. § 14-2-1302(b);

(f) In the event the purported conversion is deemed valid, failed to obtain valid approval of the board of directors for merger with Prime Merger in accordance with O.C.G.A. § 14-2-1103(b)(1) and O.C.G.A. § 14-2-1101(a). *See also* O.C.G.A. § 14-2-1302(b);

(g) In the event the purported conversion is deemed valid, procured the purported merger

-34-

through fraudulent and deceptive means. *See* O.C.G.A. § 14-2-1302(b);

(h) Failed to maintain and provide access to corporate records, i.e. appropriate accounting records in accordance with O.C.G.A. § 14-2-1601(b); shareholder access to records in accordance with O.C.G.A. § 14-2-1602; and financial statements to shareholders in accordance with O.C.G.A. § 14-2-1620;

(i) Made unlawful distributions to shareholders in violation of O.C.G.A. § 14-2-640; and

(j) Violated Robson's duty of care, duty of loyalty and duty to avoid improper conflict of interest transactions as a director and/or officer under O.C.G.A. §§ 14-2-830, 14-2-842, 14-2-861 and 14-2-864.

### 158.

Plaintiffs seek damages and/or appropriate equitable relief for the foregoing violations, and further challenge and seek to invalidate the purported conversion of AFF to a Georgia corporation and the subsequent purported merger with Prime Merger.

### COUNT FOURTEEN
### PETITION FOR DECLARATORY JUDGMENT

### 159.

Plaintiffs re-allege and incorporate herein by reference Paragraphs 1 through 158 of this Complaint as if fully set forth herein.

### 160.

Pursuant to and in accordance with the Declaratory Judgment Act (O.C.G.A. § 9-4-1, *et seq.*) Plaintiffs hereby petition this Court for the following declaratory judgment(s):

(a) The purported conversion of AFF from a Florida corporation to a Georgia corporation is invalid under Florida and/or Georgia law;

(b) The purported merger between AFF and Prime Merger is invalid under Florida and/or

Georgia law;

(c) The purported acquisition by Robson of a controlling interest in AFF was invalid; and

(d) AFF is liable for all of the debts of L & D.

## COUNT FIFTEEN
## VIOLATION OF SECURITIES EXCHANGE ACT OF 1934

161.

Plaintiffs re-allege and incorporate herein by reference Paragraphs 1 through 160 of this Complaint as if fully set forth herein.

162.

Upon information and belief, Defendants have violated the Securities Exchange Act of 1934 (15 U.S.C. § 78a, *et seq.*), and SEC regulations promulgated thereunder, in particular the securities fraud provisions of 15 U.S.C. 78j and 17 C.F.R. 240.10b-5, in the following manner, which is hereby provided by way of illustration, and not limitation:

(a) At the time they purchased their stock in AFF, Plaintiffs were denied access to material information regarding the viability and financial health of the company;

(b) At the time they purchased their stock in AFF, Plaintiffs were provided financial and other information regarding the company that was materially false and misleading;

(c) In conjunction with any and all share transactions connected with the purported conversion and merger of AFF, Plaintiffs were denied access to material information regarding the viability and financial health of the company;

(d) In conjunction with any and all share transactions connected with the purported conversion and merger of AFF, Plaintiffs were provided financial and other information regarding the company that was materially false and misleading; and

(e) Secured purported majority control of AFF through the use of false and misleading

representations.

163.

Plaintiffs seek damages and/or rescission of the fraudulent transactions.

**COUNT SIXTEEN**
**VIOLATION OF FLORIDA SECURITIES AND INVESTOR PROTECTION ACT**

164.

Plaintiffs re-allege and incorporate herein by reference Paragraphs 1 through 163 of this Complaint as if fully set forth herein.

165.

Upon information and belief, Defendants have violated the Florida Securities and Investor Protection Act (Fla. Stat. § 517.011, *et seq.*), in the following manner, which is hereby provided by way of illustration, and not limitation:

(a) At the time they purchased their stock in AFF, Plaintiffs were denied access to material information regarding the viability and financial health of the company in violation of the securities fraud provisions of Fla. Stat. § 517.301;

(b) At the time they purchased their stock in AFF, Plaintiffs were provided financial and other information regarding the company that was materially false and misleading in violation of the securities fraud provisions of Fla. Stat. § 517.301;

(c) In conjunction with any and all share transactions connected with the purported conversion and merger of AFF, Plaintiffs were denied access to material information regarding the viability and financial health of the company in violation of the securities fraud provisions of Fla. Stat. § 517.301;

(d) In conjunction with any and all share transactions connected with the purported conversion and merger of AFF, Plaintiffs were provided financial and other information

regarding the company that was materially false and misleading in violation of the securities fraud provisions of Fla. Stat. § 517.301;

(e) Securing purported majority control of AFF through the use of false and misleading representations; and

(f) Sold Plaintiffs shares in AFF in violation of the securities registration requirements of Fla. Stat. § 517.07, where such sales were not exempt from registration, in particular because Plaintiffs were not "provided with, or given reasonable access to, full and fair disclosure of all material information" in violation of Fla. Stat. § 517.061(11)(a)(3).

166.

Plaintiffs seek damages and/or rescission of the fraudulent transactions, as well as attorney's fees under Fla. Stat. § 517.211(6).

## COUNT SEVENTEEN
## VIOLATION OF GEORGIA UNIFORM SECURITIES ACT OF 2008

167.

Plaintiffs re-allege and incorporate herein by reference Paragraphs 1 through 166 of this Complaint as if fully set forth herein.

168.

Upon information and belief, Defendants have violated the Georgia Uniform Securities Act of 2008 (O.C.G.A. § 10-5-1, *et seq*.), in the following manner, which is hereby provided by way of illustration, and not limitation:

(a) In conjunction with any and all share transactions connected with the purported conversion and merger of AFF, Plaintiffs were denied access to material information regarding the viability and financial health of the company in violation of the securities fraud provisions of O.C.G.A. §§ 10-5-50 and 10-5-58;

(b) In conjunction with any and all share transactions connected with the purported conversion and merger of AFF, Plaintiffs were provided financial and other information regarding the company that was materially false and misleading in violation of the securities fraud provisions of O.C.G.A. §§ 10-5-50 and 10-5-58; and

(c) Securing purported majority control of AFF through the use of false and misleading representations.

169.

Plaintiffs seek damages and/or rescission of the fraudulent transactions, as well as attorney's fees under O.C.G.A. §§ 10-5-58(b) and/or 10-5-58(c).

**COUNT EIGHTEEN**
**VIOLATION OF FEDERAL RICO ACT**

170.

Plaintiffs re-allege and incorporate herein by reference Paragraphs 1 through 169 of this Complaint as if fully set forth herein.

171.

18 U.S.C. § 1964(c) provides a civil right of action for treble compensatory damages and expenses of litigation, including attorney's fees, for any person injured by a violation of 18 U.S.C. § 1962.

172.

18 U.S.C. § 1962 makes it unlawful for any person (a) to invest any money obtained through a pattern of racketeering activity in any enterprise engaged in interstate commerce; (b) to acquire or maintain, through a pattern of racketeering activity, any interest in or control of an enterprise engaged in interstate commerce; (c) to conduct or participate in, through a pattern of racketeering activity, the affairs of an enterprise engaged in interstate commerce; or (d) conspire

to do any of the foregoing.

173.

18 U.S.C. § 1961(5) defines a pattern of racketeering activity as engaging in at least two acts of racketeering activity.

174.

Upon information and belief, Defendants have engaged in the following acts of racketeering activity, as defined under 18 U.S.C. § 1961(1), which are hereby provided by way of illustration, and not limitation:

(a) Engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957;

(b) Affecting commerce through extortion in violation of 18 U.S.C. § 1951;

(c) Receipt of stolen goods, securities or moneys in violation of 18 U.S.C. § 2315;

(d) Transportation of stolen goods, securities or moneys in violation of 18 U.S.C. § 2314;

(e) Mail fraud in violation of 18 U.S.C. § 1341;

(f) Wire fraud in violation of 18 U.S.C. § 1343;

(g) Bank fraud in violation of 18 U.S.C. § 1344;

(h) Interstate and foreign travel or transportation in aid of racketeering enterprises in violation of 18 U.S.C. 1952;

(i) Money laundering in violation of 18 U.S.C. § 1956; and

(j) Identity fraud in violation of 18 U.S.C. § 1028.

175.

AFF is, and at all times relevant to this action has been, a business enterprise engaged in interstate commerce.

176.

Upon information and belief, Defendants have invested funds obtained through this pattern of racketeering activity in enterprises engaged in interstate commerce.

177.

Upon information and belief, Defendants have acquired and/or maintained, through this pattern of racketeering activity, an interest in and/or control of enterprises engaged in interstate commerce.

178.

Upon information and belief, Defendants have conducted and/or participated in, through this pattern of racketeering activity, the affairs of enterprises engaged in interstate commerce.

179.

Upon information and belief, Defendants have conspired to commit these violations of the Federal RICO Act.

180.

Defendants' Federal RICO violations have caused substantial financial harm to Plaintiffs, as well as the devastation of Miller's and Smith's personal credit and the loss of the West Hightower Property.

181.

Therefore, Defendants are liable to Plaintiffs for violation of the Federal RICO Act, and Plaintiffs are entitled to treble compensatory damages and expenses of litigation, including attorney's fees, in an amount to be proven or determined at trial.

COUNT NINETEEN
VIOLATION OF GEORGIA RICO ACT

182.

Plaintiffs re-allege and incorporate herein by reference Paragraphs 1 through 181 of this Complaint as if fully set forth herein.

183.

O.C.G.A. § 16-14-6(c) provides a civil right of action for treble compensatory damages, punitive damages and expenses of investigation and litigation, including attorney's fees, for any person injured by a violation of O.C.G.A. § 16-14-4.

184.

O.C.G.A. § 16-14-4 makes it unlawful for any person (a) to acquire or maintain, through a pattern of racketeering activity or proceeds derived therefrom, any interest in or control of an enterprise, real property, or personal property, including money; (b) who is employed by or associated with any enterprise, to conduct or participate in, through a pattern of racketeering activity, the affairs of such enterprise; or (c) conspire or endeavor to do any of the foregoing.

185.

O.C.G.A. § 16-14-3(8) defines a pattern of racketeering activity as engaging in at least two acts of racketeering activity.

186.

Upon information and belief, Defendants have engaged in the following acts of racketeering activity, as defined under O.C.G.A. § 16-14-3(9), which are hereby provided by way of illustration, and not limitation:

(a) The acts of federal racketeering activity alleged in this Complaint, which are incorporated herein by reference in accordance with O.C.G.A. § 16-14-3(9)(A)(xxix);

(b) Theft by taking in violation of O.C.G.A. § 16-8-2;

(c) Theft by deception in violation of O.C.G.A. § 16-8-3;

(d) Theft by conversion in violation of O.C.G.A. § 16-8-4;

(e) Theft by receiving stolen property in violation of O.C.G.A. § 16-8-7;

(f) Theft by receiving stolen property in another state in violation of O.C.G.A. § 16-8-8;

(g) Theft by bringing stolen property into state in violation of O.C.G.A. § 16-8-9;

(h) Theft by extortion in violation of O.C.G.A. § 16-8-16;

(i) Securities fraud in violation of O.C.G.A. § 10-5-50;

(j) Financial transaction card fraud in violation of O.C.G.A. § 16-9-33;

(k) Criminal receipt of goods or services fraudulently obtained in violation of O.C.G.A. § 16-9-35; and

(l) Identity fraud in violation of O.C.G.A. § 16-9-121.

187.

Upon information and belief, Defendants have acquired and/or maintained, through this pattern of racketeering activity and/or the proceeds derived therefrom, an interest in and/or control of enterprises, real property, and personal property, including money.

188.

Upon information and belief, Defendants have conducted and/or participated in, through this pattern of racketeering activity, the affairs of enterprises by which they have been employed or with which they have been associated.

189.

Upon information and belief, Defendants have conspired and/or endeavored to commit these violations of the Georgia RICO Act.

190.

Defendants' Georgia RICO violations have caused substantial financial harm to Plaintiffs, as well as the devastation of Miller's and Smith's personal credit and the loss of the West Hightower Property.

191.

Therefore, Defendants are liable to Plaintiffs for violation of the Georgia RICO Act, and Plaintiffs are entitled to treble compensatory damages, punitive damages and expenses of investigation and litigation, including attorney's fees, in an amount to be proven or determined at trial.

192.

In addition, Plaintiffs seek equitable relief under O.C.G.A. §§ 16-14-6(a) and (b).

## COUNT TWENTY
## VIOLATION OF FLORIDA CIVIL REMEDIES FOR CRIMINAL PRACTICES ACT

193.

Plaintiffs re-allege and incorporate herein by reference Paragraphs 1 through 192 of this Complaint as if fully set forth herein.

194.

Fla. Stat. § 772.104 provides a civil right of action for treble compensatory damages and expenses of litigation, including attorney's fees, for any person injured by a violation of Fla. Stat. § 772.103.

195.

Fla. Stat. § 772.103 makes it unlawful for any person (a) to use or invest any proceeds derived from a pattern of criminal activity in the acquisition of any interest in real property or in the establishment or operation of any enterprise; (b) to acquire or maintain, through a pattern of

criminal activity, any interest in or control of any enterprise or real property; (c) who is employed by or associated with any enterprise, to conduct or participate in, through a pattern of criminal activity, the affairs of such enterprise; or (d) conspire or endeavor to do any of the foregoing.

196.

Fla. Stat. § 772.102(4) defines a pattern of criminal activity as engaging in at least two incidents of related criminal activity.

197.

Upon information and belief, Defendants have engaged in the following acts of criminal activity, as defined under Fla. Stat. § 772.102(1), which are hereby provided by way of illustration, and not limitation:

(a) The acts of federal racketeering activity alleged in this Complaint, which are incorporated herein by reference in accordance with Fla. Stat. § 772.102(1)(b);

(b) Theft in violation of Fla. Stat. § 812.014;

(c) Theft from persons 65 years or older in violation of Fla. Stat. § 812.0145;

(d) Dealing in stolen property in violation of Fla. Stat. § 812.019;

(e) Making false statements to obtain property or credit in violation of Fla. Stat. § 817.03;

(f) Violation of the Florida Communications Fraud Act (Fla. Stat. § 817.034);

(g) Making false entries on books of corporation in violation of Fla. Stat. § 817.15;

(h) Fraudulent acts within jurisdiction of Department of State in violation of Fla. Stat. § 817.155;

(i) Credit card fraud in violation of Fla. Stat. § 817.481;

(j) False statement as to financial condition in violation of Fla. Stat. § 817.59;

(k) Fraudulent use of credit cards in violation of Fla. Stat. § 817.61;

(l) Receipt of money obtained by fraudulent use of credit cards in violation of Fla. Stat. § 817.64;

(m) Extortion in violation of Fla. Stat. § 836.05;

(n) Violation of the Florida Money Laundering Act (Fla. Stat. § 896.101);

(o) Securities violations pursuant to Fla. Stat. § 517.302;

(p) Obtaining property by false personation in violation of Fla. Stat. § 817.02;

(q) Cheating in violation of Fla. Stat. § 817.29;

(r) Fraud involving a security interest in violation of Fla. Stat. § 817.562; and

(s) Criminal use of personal identification information in violation of Fla. Stat. § 817.568.

198.

Upon information and belief, Defendants have used and/or invested proceeds derived from this pattern of criminal activity in the acquisition of interest(s) in real property and/or in the establishment or operation of enterprises.

199.

Upon information and belief, Defendants have acquired and/or maintained, through this pattern of criminal activity, interest(s) in or control of enterprises and/or real property;

200.

Upon information and belief, Defendants have conducted and/or participated in, through this pattern of criminal activity, the affairs of enterprises by which they have been employed or with which they have been associated.

201.

Upon information and belief, Defendants have conspired and/or endeavored to commit

these violations of the Florida Civil Remedies for Criminal Practices Act ("FCRCPA").

202.

Defendants' FCRCPA violations have caused substantial financial harm to Plaintiffs, as well as the devastation of Miller's and Smith's personal credit and the loss of the West Hightower Property.

203.

Therefore, Defendants are liable to Plaintiffs for violation of the FCRCPA, and Plaintiffs are entitled to treble compensatory damages and expenses of litigation, including attorney's fees, in an amount to be proven or determined at trial.

204.

In addition, Plaintiffs seek equitable relief under Fla. Stat. §§ 895.05(1) and (6).

### COUNT TWENTY ONE
### THEFT

205.

Plaintiffs re-allege and incorporate herein by reference Paragraphs 1 through 204 of this Complaint as if fully set forth herein.

206.

O.C.G.A. § 51-10-6 provides a civil tort action for a party damaged by the commission of a theft.

207.

Upon information and belief, Defendants, through the conduct alleged in this Complaint, have committed the following acts of theft, which are hereby provided by way of illustration, and not limitation:

(a) Theft by taking in violation of O.C.G.A. § 16-8-2;

(b) Theft by deception in violation of O.C.G.A. § 16-8-3;

(c) Theft by conversion in violation of O.C.G.A. § 16-8-4;

(d) Theft by receiving stolen property in violation of O.C.G.A. § 16-8-7;

(e) Theft by receiving stolen property in another state in violation of O.C.G.A. § 16-8-8;

(f) Theft by bringing stolen property into state in violation of O.C.G.A. § 16-8-9; and

(g) Theft by extortion in violation of O.C.G.A. § 16-8-16.

208.

Defendants' acts of theft have caused substantial financial harm to Plaintiffs, as well as the devastation of Miller's and Smith's personal credit and the loss of the West Hightower Property.

209.

Therefore, Defendants are liable to Plaintiffs for theft, and Plaintiffs are entitled to damages in an amount to be proven or determined at trial.

## COUNT TWENTY TWO
## IDENTITY FRAUD

210.

Plaintiffs re-allege and incorporate herein by reference Paragraphs 1 through 209 of this Complaint as if fully set forth herein.

211.

Upon information and belief, Defendants used personal identifying information of Plaintiffs to obtain credit in their names, without their knowledge and beyond any authorization provided by Plaintiffs.

212.

O.C.G.A. § 16-9-130 provides a civil right of action for treble actual damages and/or

general damages, punitive damages and expenses of litigation, including attorney's fees, for any person injured by identity fraud.

213.

Upon information and belief, Defendants, through the conduct alleged in this Complaint, have violated the identity fraud provisions of O.C.G.A. §§ 16-9-121 and 16-9-122.

214.

Upon information and belief, Defendants' acts of identity fraud were intentional, or at the very least in violation of the identity fraud statute, and have caused substantial financial harm to Plaintiffs, as well as the devastation of Miller's and Smith's personal credit.

215.

Therefore, Defendants are liable to Plaintiffs for identity fraud, and Plaintiffs are entitled to treble actual damages and/or general damages, punitive damages and expenses of litigation, including attorney's fees, in an amount to be proven or determined at trial.

216.

In addition, Plaintiffs seek equitable relief under O.C.G.A. § 16-9-130(a).

## COUNT TWENTY THREE
## VIOLATION OF GEORGIA UNIFORM FRAUDULENT TRANSFERS ACT

217.

Plaintiffs re-allege and incorporate herein by reference Paragraphs 1 through 216 of this Complaint as if fully set forth herein.

218.

Plaintiffs are creditors of Defendants AFF and L & D.

219.

Upon information and belief, Defendants have made transfers of property out of AFF and

L & D, and/or have incurred new obligations in violation of O.C.G.A. §§ 18-2-74(a)(1) and/or (a)(2), and/or 18-2-75(a) and/or (b).

220.

Defendants' fraudulent transfers have caused substantial financial harm to Plaintiffs, as well as the devastation of Miller's and Smith's personal credit and the loss of the West Hightower Property.

221.

Therefore Defendants are liable to Plaintiffs for said fraudulent transfers, and Plaintiffs seek, and are entitled to, equitable relief under O.C.G.A. § 18-2-77(a), as well as damages for fraud in an amount to be proven or determined at trial pursuant to O.C.G.A. § 18-2-78 and/or *Miller v. Lomax*, 266 Ga.App. 93, 96, 596 S.E.2d 232 (2004) and *Kesler v. Veal*, 257 Ga. 677, 677-78, 362 S.E.2d 214 (1987).

COUNT TWENTY FOUR
ACCOUNTING

222.

Plaintiffs re-allege and incorporate herein by reference Paragraphs 1 through 221 of this Complaint as if fully set forth herein.

223.

This Court has authority to require an accounting under, *inter alia*, O.C.G.A. § 23-2-70.

224.

Moreover, " '[w]here a fiduciary relation exists, an accounting in equity is proper.' " *Peacock v. Chegwidden*, 238 Ga.App. 328, 330, 518 S.E.2d 760 (1999).

225.

The facts alleged in this Complaint demonstrate that an accounting is likely to reveal that

Plaintiffs are entitled to recover.

226.

Accordingly, Plaintiffs hereby seek an accounting as to AFF and L & D.

COUNT TWENTY FIVE<br>VEIL PIERCING

227.

Plaintiffs re-allege and incorporate herein by reference Paragraphs 1 through 226 of this Complaint as if fully set forth herein.

228.

" 'The concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party has over extended his privilege in the use of a corporate entity in order to defeat justice, perpetuate fraud or to evade contractual or tort responsibility.' ... 'Plaintiff must show that the defendant disregarded the separateness of legal entities by commingling on an interchangeable or joint basis or confusing the otherwise separate properties, records or control.' " *Renee Unlimited, Inc. v. City of Atlanta*, 301 Ga.App. 254, 259, 687 S.E.2d 233 (2009).

229.

Upon information and belief, Defendants, and Robson in particular, have disregarded the separateness of the entities legally and/or practically under their control, including, but not limited to, AFF, L & D, Prime Pak, Prime Merger and Kingdom Connection.

230.

Upon information and belief, Defendants have commingled funds and property of these entities, and other entities under Robson's control and/or the control of his co-conspirators, have used combined or interchangeable records and/or have exercised common control without the

-51-

acknowledgement or recognition of corporate formalities, rules and procedures.

231.

Upon information and belief, Defendants have engaged in this conduct for the purpose of evading liability and perpetuating an ongoing scheme to defraud the Plaintiffs.

232.

Accordingly, the corporate entities used by Robson and his associates are the alter egos of Defendants and of each other and should provide no shield to holding the respective individuals and other entities liable for the liabilities of each of these entities.

233.

Plaintiffs are therefore entitled to pierce any and all corporate veils that would otherwise provide protection for the Defendants from the liabilities of the corporate parties, and thus establish liability on the part of Robson, his co-conspirators and/or entities under his control as to any and all claims against the corporate Defendants.

### COUNT TWENTY SIX
### CONSTRUCTIVE TRUST AND/OR EQUITABLE LIEN

234.

Plaintiffs re-allege and incorporate herein by reference Paragraphs 1 through 233 of this Complaint as if fully set forth herein.

235.

"A constructive trust is a trust implied whenever the circumstances are such that the person holding legal title to property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity." O.C.G.A. § 53-12-132; *Edwards v. Edwards*, 267 Ga. 780, 781, 482 S.E.2d 701 (1997).

236.

Where a party has been defrauded, "the plaintiff can 'enforce either a constructive trust or an equitable lien on the fund' … and, further, if a plaintiff proves that the fraudulently procured funds were used by the defendant to purchase other property, the plaintiff can reach the other property 'by a proceeding in equity, and … can enforce a constructive trust or an equitable lien.' " *Middlebrooks v. Lonas*, 246 Ga. 720, 721, 272 S.E. 2d 687 (1980).

237.

The fraudulent and other improper conduct of Defendants set forth in this Complaint has resulted in Defendants having, in contravention of Plaintiffs' superior interest, legal title to the West Hightower Property, substantial funds acquired on the credit of Plaintiffs, and other funds or property subject to Plaintiffs' security interest, some or all of which has been improperly transferred or dissipated to parties other than the primary obligors.

238.

Accordingly, Plaintiffs seek to impose a constructive trust and/or an equitable lien on the West Hightower Property, on any and all funds acquired as a result of Plaintiffs' credit, and on any and all property subject to Plaintiffs' security interest for the repayment of all debts and obligations owed to Plaintiffs, whether such funds or property are still in Defendants' possession, or have been transferred to other parties or used to acquire other property, in which event Plaintiffs further seek a constructive trust and/or equitable lien on any such property so acquired.

## COUNT TWENTY SEVEN
## CIVIL CONSPIRACY

239.

Plaintiffs re-allege and incorporate herein by reference Paragraphs 1 through 238 of this Complaint as if fully set forth herein.

240.

"A conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means. To recover damages for a civil conspiracy claim, a plaintiff must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort." *Golden Atlanta Site Development, Inc. v. Nahai*, 299 Ga.App. 646, 651, n. 3, 683 S.E.2d 166 (2009).

241.

In addition, "[i]n all cases, a person who maliciously procures an injury to be done to another, whether an actionable wrong or a breach of contract, is a joint wrongdoer and may be subject to an action either alone or jointly with the person who actually committed the injury." O.C.G.A. § 51-12-30.

242.

Upon information and belief, the harm to Plaintiffs caused by the conduct and schemes set forth in this Complaint are the result of concerted action on the part of all Defendants, at one point or another in the execution of these schemes, and/or is the consequence of one or more Defendants procuring actionable conduct by other Defendants.

243.

Defendants' conspiracy and/or joint conduct have caused substantial financial harm to Plaintiffs, as well as the devastation of Miller's and Smith's personal credit and the loss of the West Hightower Property.

244.

As such, Defendants are liable to Plaintiffs for civil conspiracy, and Plaintiffs are entitled to damages in an amount to be proven or determined at trial.

245.

Moreover, in addition to any direct liability otherwise established, Plaintiffs seek to hold each Defendant further liable, as a co-conspirator and/or joint wrongdoer, for any and all conduct of the other Defendants, where the Defendants were engaged in and furthering the conspiracy or where the conduct actually giving rise to the claims set forth in this Complaint was procured by any Defendant.

## COUNT TWENTY EIGHT
## PUNITIVE DAMAGES

246.

Plaintiffs re-allege and incorporate herein by reference Paragraphs 1 through 245 of this Complaint as if fully set forth herein.

247.

The conduct of Defendants set forth in this Complaint is evidence of "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences", and constitutes a sufficient basis for the imposition of punitive damages in an amount to be determined at trial, pursuant to O.C.G.A. § 51-12-5.1.

248.

Any such punitive damages such further be uncapped as the conduct set forth in this Complaint is evidence of a "specific intent to cause harm", and constitutes a sufficient basis under O.C.G.A. § 51-12-5.1(f) to avoid the general limitation on the amount of punitive damages which may be awarded.

**COUNT TWENTY NINE**
**ATTORNEY'S FEES AND EXPENSES OF LITIGATION**

249.

Plaintiffs re-allege and incorporate herein by reference Paragraphs 1 through 248 of this Complaint as if fully set forth herein.

250.

Defendants' conduct set forth in this Complaint represents bad faith conduct and stubborn litigiousness which has caused Plaintiffs unnecessary trouble and expense.

251.

Plaintiffs are therefore entitled to recover their expenses of litigation, including reasonable attorney's fees, in an amount to be proven or determined at trial, pursuant to O.C.G.A. § 13-6-11.

252.

Plaintiffs further seek recovery of attorney's fees and expenses of litigation under the statutory provisions previously alleged this Complaint, which are hereby incorporated by reference.

**V. <u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs pray that this Court:

(a)   Assume jurisdiction over this action and afford Plaintiffs a trial by jury on all issues so triable;

(b)   Award Plaintiffs compensatory damages, both actual and general, against Defendants in amounts to be proven or determined at trial on each of the claims for damages set forth in this Complaint;

(c)   Award Plaintiffs uncapped punitive damages against Defendants in an amount to

be determined at trial;

(d)     Award Plaintiffs treble damages pursuant to the statutory provisions asserted herein;

(e)     Enter the declaratory judgments sought by Plaintiffs;

(f)     Cancel the Deed Under Power recorded at Deed Book 921, Page 1, Dawson County, Georgia Records;

(g)     Grant such equitable and/or specific statutory relief sought in this Complaint as may be appropriate, including, but not limited to, injunctive relief, avoidance of fraudulent transfers, attachment, appointment of a receiver, and/or rescission;

(h)     Order the accounting sought in this Complaint;

(i)     Pierce the corporate veils as sought in this Complaint;

(j)     Impose the constructive trusts and/or equitable liens sought in this Complaint;

(k)     Find Defendants liable as co-conspirators and/or joint wrongdoers;

(l)     Award Plaintiffs pre-judgment interest pursuant to O.C.G.A. § 7-4-15 at the maximum legal rate of 1.5% per month under O.C.G.A. § 7-4-16;

(m)     Award Plaintiffs post-judgment interest at the maximum legal rate;

(n)     Award Plaintiffs their investigation and litigation expenses, including reasonable attorney's fees and the costs of this action incurred by Plaintiffs; and

(o)     Grant all such other relief that it deems just and appropriate.

[SIGNATURES ON FOLLOWING PAGE]

This 8th day of December, 2010.

Respectfully submitted,
MCGAHREN, GASKILL & YORK, LLC

Matthew F. McGahren, Esq., *Lead Counsel*
Georgia Bar No. 491330
Eric J. Marlett, Esq.
Georgia Bar No. 470931

Attorneys for Plaintiffs

6171 Crooked Creek Rd., Suite A
Peachtree Corners, Georgia 30092
(770) 729-1779